UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 22-75 |
| v. | * | SECTION: "L" |
| HERBERT COOPER | * | |

\* \* \*

**GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

**NOW INTO COURT** comes the United States of America, through the undersigned Assistant United States Attorney, and respectfully opposes the defendant's motion to suppress the evidence. (Rec. Doc. 42).

**I. SUMMARY OF ARGUMENT**

**A. March 13, 2022 Stop**

Indisputable Real Time Crime Camera (*i.e.*, one of the flashing blue light cameras that are all over the city) footage from the area of North Gayoso and Iberville Streets in New Orleans makes clear that Cooper carried a concealed weapon on his person. The experienced New Orleans Police Department ("NOPD") detective's observations of Cooper on the Real Time Crime Camera on March 13, 2022 and analysis of the high crime area involved provided reasonable suspicion for a *Terry* stop. Therefore, because the police officers had reasonable suspicion justifying a *Terry* stop, the defendant's motion to suppress has no basis in fact or law and should be denied without a hearing.

### B. March 24, 2022 Statement

The Government does not intend to use the March 24, 2022 statement in its case-in-chief due to a lack of evidence of Miranda Warnings being given and Cooper's counsel not being present at the time of the statement.

## II. BACKGROUND

### A. March 13, 2022 Stop

On March 13, 2022, NOPD Detective Chad Cockerham reviewed Real Time Crime footage from the area of North Gayoso and Iberville Streets in New Orleans due to a recent triple homicide in the area. On February 26, 2022, a triple homicide occurred in the 2900 block of Conti Street, less than half a mile from the location of the Real Time Crime Center camera located at North Gayoso and Iberville Streets. Two (2) men and a fifteen-year-old girl were killed. Acting upon information that retaliation for the shooting may occur near the conclusion of the Second Line Parade occurring on March 13, 2022, Detective Cockerham surveilled the area via the Real Time Crime Center footage.[1] At approximately 5:14 p.m. that day, he observed on the camera a black male dressed in a black "Dickie" shirt and jeans, later identified as the defendant Herbert Cooper. Cooper was standing in the middle of the street and talking to another person in a white car. (Rec. Doc. 42-2, p. 4). Cooper unlocked a Dodge Challenger, retrieved a bag from the trunk of the Dodge Challenger, and leaned into the driver's seat with the bag. Immediately, another male wearing checkered pants and a white shirt approached Cooper at Cooper's driver door. Cooper then handed items to the male who immediately provided Cooper cash. The buyer removed a firearm from his pocket in order to access the cash he used to pay Cooper. The firearm is circled in red.

---

[1] The Keeping It Real Second Line occurred on March 13, 2022. The Second Line disbanded at 2901 Conti Street at the conclusion of the parade.



Cooper replaced the bag in the Challenger's trunk. At approximately 5:21 p.m., Cooper continued to stand in the street and talk to an individual in a white car. While doing so, Cooper adjusted his shirt and waistband and placed his hand around an object located in his waistband. Cooper held the object concealed in his waistband in a similar way to an individual holding a gun. Cooper then raised his shirt and adjusted his pants revealing an object with a distinctive blue floor plate.



At approximately 5:30 pm, Cooper again removed the bag from the Challenger's trunk and leaned into the driver's seat after placing the bag inside the driver's door.



After leaning into the vehicle, Cooper adjusted his shirt and waistband. Detective Cockerham continued to observe the camera and again saw the object, at which time he could

4

clearly see the butt of a handgun. Based on his numerous years of experience working on drug trafficking and firearm investigations, Detective Cockerham believed the object Cooper concealed was a firearm. (Rec. Doc. 42-2, p. 4).



Detective Cockerham relayed his finding to NOPD Lieutenant Batiste who instructed Officer Enamorado to conduct an investigatory stop. Officer Enamorado arrived at the scene in a marked police vehicle. Cooper began walking away, and Officer Enamorado instructed Cooper to stop and to show his hands. (Rec. Doc. 42-2, p. 4). Cooper then fled from the officer and a foot chase through an "open wooded lot and behind several residences" began. *Id.* Officer Jones detained Cooper nearby on Conti and North Dupre Streets. Cooper was not in possession of a firearm when apprehended. Police searched Cooper's path of flight and quickly located a black Glock .40 caliber weapon loaded with an extended magazine with a blue floor plate near a sidewalk on Conti Street. *Id.* This location matched Cooper's route of travel when fleeing from Officer Enamorado. The below images taken from NOPD Body Worn Camera footage from March 13, 2022 show the firearm.



Cooper was arrested and charged with violations of La. R.S. 14:95 (Illegal Carrying of a Weapon), La. R.S. 14:95.2 (Carrying a Firearm in a Firearm Free Zone) and La. R.S. 14:108 (Flight from an Officer).

### B. March 24, 2022 Statement

Detective Thomas of the Slidell Louisiana Police Department took a statement from Cooper while serving a Notice of Forfeiture. Further investigation of Cooper led to the search of a residence in Slidell, Louisiana. The Slidell Police Department seized property and began the asset forfeiture process. In doing so, Detective Thomas interviewed Cooper. The only information available to the Government from the Slidell Police Department Officer Report is: "On March 24, 2022, Detective Thomas traveled to the Orleans Parish Prison and interviewed Cooper. During this interview Cooper claimed sole ownership of the items located in the safe." (Rec. Doc. 42-4, p. 5). The Government agrees Cooper was represented by counsel as shown by Defense's Exhibit D. (Rec. Doc. 42-5). The Government is not aware of nor in possession of a Miranda Waiver form concerning this interview. Moreover, the Government does not intend to use said statement as a part of its case-in-chief.

### III. LAW AND ARGUMENT

**A. There was reasonable suspicion for a *Terry* stop and frisk of Cooper.**

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), "[p]olice officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot. The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (citations omitted). "Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *Id*. (citation omitted).

"In assessing the reasonableness of an officer's actions, it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (quoting *Terry*, 392 U.S. at 22) (internal quotation marks omitted). This inquiry does not depend on the "officer's state of mind, or his stated justification for his actions." *Id*. (citation omitted). Instead, the Fourth Amendment is satisfied "[a]s long as all the facts and circumstances, viewed objectively, support the officer's decisions." *Id*. In short, "[w]e must attempt to put ourselves in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context." *Id*.[2]

---

[2] Reasonable suspicion may arise through the collective knowledge of the officers involved in the operation. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013); *United States v. Clark*, 559 F.2d 420, 424 (5th Cir. 1977). The collective knowledge doctrine applies so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). Here, the surveilling officer relayed pertinent information to uniformed officers who conducted the challenged stop.

### 1. The surveilling officer had reasonable suspicion to believe Cooper was carrying a concealed firearm and thus uniformed officers were justified in stopping Cooper.

The indisputable video evidence in this case makes clear that the officers had a reasonable basis to believe that Cooper was carrying a concealed firearm in his pants. Cooper adjusted his pants and waistline multiple times, while a heavy object in his waistband was pulling his pants down. When Cooper adjusted his pants and waistline, the blue magazine floor plate became visible. Also, Cooper gripped the firearm in the same logical way any individual would grip the handle of a firearm. Cooper's pleading can do nothing to diminish the fact that a reasonable person watching the video, would believe that Cooper was carrying a concealed weapon.

And here, of course, it was not simply a reasonable person watching the video but rather an experienced NOPD Detective with years of experience on the streets of New Orleans. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (The totality of circumstances analysis "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."). Nor was he watching the video in a vacuum. Detective Cockerham knew a triple homicide recently occurred in the area, and expectations of retaliation existed. Thus, Detective Cockerham included a "high crime area" to his *Terry* analysis. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). He could reasonably infer, based on his training and experience, and the totality of circumstances, that the bulge and noticeable floorplate he observed in Cooper's pants was likely a concealed handgun. That was enough to warrant further investigation.

### 2. The observation of a concealed weapon provided reasonable suspicion for further investigation.

Cooper argues that merely carrying a concealed weapon does not provide reasonable suspicion for a *Terry* stop/frisk. According to Cooper, because Louisiana is a "shall issue" state

8

for concealed carry permits, officers cannot conduct a *Terry* stop just because they believe someone has a concealed weapon.

Judge Africk confronted the same issue in *United States v. Wilson*, No. CR 22-92, 2023 WL 3601590, at *4 (E.D. La. May 23, 2023), where, like Cooper, the defendant argued that an officer's belief that an individual is carrying a concealed firearm is, without more, insufficient to constitute reasonable suspicion of a crime in Louisiana, where permits to carry a concealed firearm "shall issue" to any person who meets the qualifications. The defendant there, like Cooper, cited *United States v. Brown*, 925 F.3d 1150, 1153-54 (9th Cir. 2019). The Court rejected the argument, holding that "the officers had reasonable suspicion to stop Wilson when they observed what appeared to be a concealed weapon on his person." *Wilson*, 22-cr-092, Doc. 81 at 12.

Under Louisiana law, it is a crime to carry a concealed weapon. *See* La. Stat. Ann. § 14:95 ("A. Illegal carrying of weapons is any of the following: (1)(a) The intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one's person."). The statute does "not apply to a person with a valid concealed handgun permit…" *Id.* However, the concealed carry permitting statute, La. Stat. Ann. § 40:1379.3, provides that "a permittee armed with a handgun in accordance with this Section … shall notify any police officer who approaches the permittee in an official manner or with an identified official purpose that he has a weapon on his person, submit to a pat down, and allow the officer to temporarily disarm him." That is, the default position in Louisiana is that carrying a concealed weapon is illegal, with the concealed carry permit being an affirmative defense that the permit holder is required by statute to assert to the officer who approaches him. *Cf. United States v. Williams*, 483 F. App'x 21, 27 (6th Cir. 2012) ("As a result of this statutory structure, merely showing that a defendant carried a pistol in a vehicle he owns or operates establishes a prima facie violation of state law; at that point, it is up to the defendant to raise the issue of licensure and offer

proof that his possession was lawful.").[3]  Because of this statutory structure, the police were justified in attempting to stop Cooper based on a reasonable suspicion he was carrying a concealed weapon.  Further, they were justified in arresting him after his flight and locating the firearm he threw.

This understanding of Louisiana law is supported by the fact that the state legislature has been considering bills that would change the law to allow concealed carry without a permit.[4]  If, as Cooper contends, it was presumptively lawful to conceal carry and that the reasonable belief someone is armed with a concealed weapon is insufficient to justify a *Terry* stop, then it hardly makes sense that the concealed carry law needs to be changed to clarify that concealed carry is legal.  The default position is that carrying a concealed weapon is illegal, subject to an affirmative defense based on a permit.  It is thus reasonable for the police to stop someone suspected of having a concealed weapon.  Once a concealed gun is discovered, it is reasonable to arrest or temporarily detain the person to investigate if he has a permit allowing concealed carry.

Lastly, even were the Court inclined to revisit its prior decision on this issue, suppression is not warranted here because the officers were operating in good faith.  Under the good faith exception to the exclusionary rule, "evidence is not to be suppressed ... where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. Williams*, 622 F.2d 830, 840-42 (5th Cir. 1980).

---

[3] The government did not locate a case analyzing the Louisiana concealed carry statute, but the relevant cases hinge on whether concealed carry is illegal with the permit being an affirmative defense versus a default position that concealed carry is legal. *See*, *e.g.*, *United States v. Pope*, 910 F.3d 413, 415-16 (8th Cir. 2018); *United States v. Gatlin,* 613 F.3d 374, 378 (3d Cir. 2010); *United States v. Lewis*, 674 F.3d 1298, 1304-06 (11th Cir. 2012).

[4] *See* "Bill to let people carry concealed guns without permits dies in Louisiana Legislature," New Orleans Advocate, by James Finn, June 6, 2023, available at https://www.nola.com/news/politics/legislature/no-permit-concealed-carry-bill-dies-in-louisiana-senate/article_a4337352-04a5-11ee-a6db-170c2b01efe2.html.

In this Circuit, the good faith exception applies to warrantless arrests. *United States v. De Leon-Reyna*, 930 F.2d 396, 400 (5th Cir. 1991). As the Court noted in *Wilson*, there does not appear to be "any Fifth Circuit case law addressing whether the fact that a person was carrying a concealed firearm is, alone, enough to arouse reasonable suspicion to justify a *Terry* stop." The most relevant precedent is *Wilson*, which rejects the defendant's argument. It would not deter police misconduct to suppress evidence when the most relevant precedent in the venue where the stop occurred holds that reasonable suspicion of a concealed weapon is sufficient to justify a *Terry* stop.

### 3. March 24, 2022 Statement.

The Government does not intend to use the March 24, 2022 statement in its case-in-chief due to a lack of evidence of Miranda Warnings being given and Cooper's counsel not being present at the time of the statement.

### IV. CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that this Honorable Court deny Herbert Cooper's Motion to Suppress Evidence and Statements.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

*/s/ Nicholas Rayburn*
NICHOLAS RAYBURN
Special Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana   70130
Telephone:  (504) 680-3162
Email:  Nicholas.Rayburn@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 29, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to defense counsel of record.

                                            */s/ Nicholas Rayburn*
                                            NICHOLAS RAYBURN
                                            Special Assistant United States Attorney